This is case number 4-12-0723 in re Marriage of Weber. For the appellant, we have Lance Cagle, and for the appellee, we have Ruth Wyman. Mr. Cagle, you may proceed. Thank you, Your Honor. May it please the Court? Counsel? Your Honors, Mr. Robert Weber is here today on appeal asking for a reversal of a $400 a month child support award which was imposed against him by the trial court on July 2nd of 2012. The trial court's ruling in this matter should be reversed for two primary reasons. Number one, the party seeking modification did not prove a substantial change in circumstances since the entry of the prior support order as required by Section 510 of the Illinois Marriage and Dissolution of Marriage Act. And number two, even in the event that a substantial change in circumstances can somehow be found, child support was not proper under the Section 505A2 factors as this is an equal time, no designation, joint parenting case. Speaking first to the substantial change in circumstances argument, Illinois law generally requires for a substantial change in circumstance to take place. There must be a change affecting either the payer's ability to pay, the payer's income, the financial circumstances of the person receiving support, or the financial circumstances of the child or children in question. In this particular case, Your Honors, it is undisputed that the income of Ms. Weber, the party seeking support, did not change. She made $58,000 in 2009 and she made $58,000 in change in 2011, the last tax year prior to the child support modification hearing. It is further undisputed that there was no increase in Mr. Weber's income. Mr. Weber is a self-employed farmer, so there will be some fluctuations in terms of the gross and net. But in tax year 2009, immediately prior to the divorce decree, Mr. Weber claimed a farm profit of approximately $62,000. In tax year 2010, that farm profit had decreased to $10,000. The gross income from his farming operation had also decreased during that time span. Finally, Your Honors, there was no testimony whatsoever of any change in circumstances relating to the needs of the minor children. The minor children in this case are 5 and 4 years old respectively at the time of the hearing. They spend an equal time in the care of each of their parents. They live approximately 17 miles apart and the minor children continue to reside half the month in the former marital residence with their mother and half of the month in their father's residence purchased after the marriage. Counsel, let me ask you, what about this $1,000 per month dividend that was addressed by the parties that your client started receiving in April of 2012? Your Honor, the dividend was attributable to a trucking operation. Like many farmers, Mr. Weber had a farming operation in conjunction with a trucking operation. This was also in place at the time of the judgment of dissolution. The testimony was that in April 2012, the month of the hearing date, that he was going to draw a $1,000 a month dividend from that portion of his operation. However, it's our position that that would have to be looked at in conjunction with 2012 income, not 2011 income. Because of the nature of the farming and trucking business, we had to use the tax return from the prior year as a determiner of Mr. Weber's income. It was really the only way we would know what post-harvest and expenses income was. And I believe that when we look at the $1,000 a month dividend, what we're doing is piecemealing two years of income together. Judge, I'd also address that by saying that I don't think you can look at it as a pure $1,000 a month. That the income information that we submitted to the court was based on 2011 taxes, a year in which Mr. Weber paid no federal income tax. We don't know that that would be the case in 2012. We don't know what the tax ramifications associated with the dividend income would have been. We can't presume that he would have been at a 0% tax bracket in 2012 as he was in 2011. But Mr. Cagle, are you saying that if the court is aware at the time of the hearing that there's additional income coming in, that they are limited to only setting income based on the prior year and can't consider it? I mean, what if he was making $10,000 additional a month? Judge, if it was true additional, I'm not saying that assuming that we're talking about true additional income. I don't think we can say with certainty this was true additional income. Well, he had never received a $1,000 a month dividend in prior years from the trucking company, had he? He had not received it in the form of a dividend. However, he did receive income from the trucking business which was reflected in his farming gross income. What had happened in 2012 which caused the dividend to be paid was that they incorporated the trucking business as a separate entity from the farming operation. It hadn't been done that way in prior years, but there was still trucking income. It was just simply put into the gross income line of the Schedule F. So are you saying that… So that income was no longer going to be there, replaced by this dividend? Is that what you're saying? I'm saying that yes, that would have replaced, theoretically, again without having access to the figures because it was a mid-year hearing, that theoretically would have replaced income that was already part of the Schedule, included on the Schedule F. We'll put aside theoretical assumptions here. What evidence was there in trial court? Was there evidence that it was simply income that had been taken into account on the farm side and now is on the trucking side? I mean, had that been presented to Judge Pacey here? Judge, my recollection of the hearing and the bystander's report was that Mr. Weber testified that he was a 25% owner with his parents of the trucking business at the time of the 2009 taxes and at the time of the judgment and that he was still a 25% owner. That's my recollection of the evidence that was offered at the hearing. Whether we got into specific details about whether it replaced that income that was already reflected in the Schedule F or not, I can't say we did. He did testify that, and it's reflected in the bystander's report, that there was an ownership interest in both 2009 and 2011 of 25% in the trucking business and that that had not changed. Was there any evidence as to what the net would be of the thousand here in 2012 at the time that Judge Pacey decided this case? No, Your Honor, and I believe that information was unknown because we didn't know what his federal tax bracket would be, bearing in mind that the majority of his income was from the farming operation. I'd ask the panel to look between the 2009 gross income and the 2011 gross income. Mr. Weber's income decreased by $50,000 a year, by $50,000 in those two periods. Even with the $12,000 from the trucking dividend, it would not have compensated for the lesser income from the farming operation between tax year 2009 and tax year 2011, which was presented to Judge Pacey. So even if we added that $12,000 back in, it doesn't make up for a $50,000 reduction in net income. So you're saying there's no change in circumstances that could be shown that his income has increased even if you added in the $12,000? Yes, Your Honor. I'm saying even if you purely added in the $12,000, if you look at the tax forms that were submitted from 2009, which are in the record, and you look at the tax forms submitted in 2011, which were in the record, the $12,000 would not bridge the gap between either the gross income or the net income reflected on those taxes. Even adding back in depreciation and other items that might not have been legitimate deductions? Yes, Your Honor. For purposes of child support? And yes, Your Honor. And the income information that we submitted to Judge Pacey did reflect and add back in of the depreciation amount. In 2012, there was a net income of $10,372, a gross profit from the farming operation. And $129,700 and change was added back in depreciation because we knew that was not an allowable discount for child support purposes. However, we did submit to the court debt repayments associated with equipment that totaled approximately $88,000 that we feel are appropriate deductions from the statutory guidelines. And those debt repayments were not disputed as to either necessity, the fact of the repayment, or the amount of the repayment at trial. They appear to have been accepted by the opposing party and also accepted by Judge Pacey. Do you have the July 10, 2012 order there that the trial court awarded the child support under? Yes, I do. I have it in the appendix of my brief, Your Honor. And I'm going to refer you to paragraphs 12 and 13. As I read this order, it's from those two paragraphs that the trial court determined that there should be an award of child support. I'm not sure how the $400 then was calculated, but it appears just looking at this order that the $1,000 per month in dividends did not enter into the court's determination that child support should be awarded and that it was simply what's set forth in paragraphs 12 and 13. That's exactly my understanding, Your Honor. The trial court did not mention this dividend in its written order. It did not mention this dividend in its bench ruling on the motion to reconsider. You won't find that anywhere in the transcript as having played a role in this. In paragraph 12, he's essentially indicating that after deducting your client's installment payments, the per month child support would basically be the same. Then in paragraph 13, he indicates that if the installment payments are allowed as deductions from income, there is a basis for deviation from the guidelines under Section 505A2. How do you interpret that? Your Honor, I didn't know how to interpret it until the motion to reconsider when at some point in the motion to reconsider, the trial court indicated that he was making an upward deviation from the statutory guidelines. And that drew my attention because in the case law, dealing with split custody equal time cases, we're always looking at a downward deviation in cases such as Reppin-Sorensen and Fleming. I'm not aware of a case that has an upward deviation from the guidelines because a parent spends an equal amount of overnight time with his child and covers half of all non-everyday expenses. Counselor, are you saying you've never seen a case where there was an upward deviation from the guidelines because of an equal parenting time circumstance? They might have equal parenting time, but what if there's a disparity in the income of the parties? A large disparity. Let's say he's making $500,000 and she's making $20,000 and they split the children equally. Are you telling me you don't think a court would be right to give her child support? No, Your Honor. I said that I had not seen a case where statutory net incomes were determined and an upward deviation from the statutory guidelines was applied in an equal time case. In the court scenario, there would not be an upward deviation. It would be an offset of the deviation. And Judge, in the Reppin-Sorensen case and the Fleming case, child support was awarded, but in those two cases there was a wild discrepancy in income. I think in one case it was $66,000 to $8,000. In another case it was approximately $40,000 with a spouse that was unemployed and somehow disabled. In those two cases, you had a spouse that was destitute. You don't have that in this case. In this case, we have a spouse that's receiving support now, even though she has the children only half the month, no daycare expense, all non-everyday expenses such as school registration, extracurricular activities split. She pays all the insurance? And she does pay all of the insurance. But that amount comes to $143 a month. And that was agreed to at the initial divorce? And it was agreed to at the time of the divorce. Nothing changed in that regard. But what if Judge Pacey felt, and I know he didn't specify this, but what if he felt like this father took $88,000 of otherwise available income and spent it on equipment, and as a result of that, Judge Pacey felt he could afford to pay $400 a month, which is pretty minimal. Well, I guess it's possible, Your Honor, that he could feel that way, but I don't see how that would encompass, number one, the first element of a substantial change in circumstances. Well, it would have left $88,000 additional income. Assuming that those facts weren't in place at the time of the ruling. I'm sorry, at the time of the prior ruling. But even then, Your Honor, I think there would have to be some kind of need for support, assuming, in this particular case, we have a support recipient that makes $60,000 a year in a rural location in Illinois with a very low cost of living. How many children are there? There are two, Your Honor. There are two. And the children, again, are ages five and four. There was no testimony about anybody being unable to make the expenses as set forth in the… I don't think she needs to show that. She needs to show the change in income. As long as she shows a substantial change of income on the part of the father, the court could be justified in giving her a reward. I think the court could modify support if a substantial change in her financial circumstances or his financial circumstances or the needs of the child. I think one of those three things would have to be in play. I agree with what I think the court is saying. Your Honor, though, I just don't think that that change was found. If you look at the motion to modify child support, it's basically a collateral attack on the prior ruling. It contains basically a statement that upon information and belief, father's income has increased. But it's conceded all throughout briefs, all throughout this stipulated bystander's report, that the net income of the mother has remained the same in this case. It hasn't changed. The basis in the motion was that she was working a few less hours a week and having to use earned time off. Does that run out at a certain time, earned time off? It's deferred compensation as I understand it. There was no testimony that I recall as to when it would have worn out. The judge did find that the shift change in and of itself was voluntary. Right. Well, that's the next thing I was going to say. It was a voluntary change in any event. It was a voluntary change in any event. It didn't significantly affect her income to begin with, and it didn't affect it at all once she used the earned time off. Your Honor, and this was pointed out in brief, but you can't supplement income with deferred compensation or some other form of income and say you're not making the same amount of money. In the Ration King case, 2011 case out of the 5th District, an individual was involved in a catastrophic automobile accident, couldn't work anymore, but his Social Security disability payment matched or exceeded his employment income. The court says, well, your circumstances have changed because you can't work, but you're not making any less money, and denied a modification of support. It's the same scenario we've got here. The mom in this case is not making any less money, and that's just not a basis for a substantial change. Again, Mr. Weber's income has not substantially changed. His employment hasn't substantially changed. When you look at the taxes, his gross income from farming was higher in 2009 than it was in 2011. His net income from farming was higher in 2009 than it was in 2011. And the needs of the child, again, don't come into play here. This is a situation where it appears to be more of a collateral attack on the earlier judgment than it is a real petition to modify based on changed circumstances. Counsel, getting back to the $88,000, what type of funds were spent during the prior years? For example, when they reached the agreement on the initial divorce, and then I think you said 2011. Well, 2011 was when it was the $88,000. Is that correct? Yes, Your Honor. Okay, so what about 2009? Your Honor, I guess that information was not presented to the trial court. I would note that for, other than to the extent the 2009 tax return was in the trial court's possession, reviewed by the trial court, I would note that the testimony as per the stipulated bystander report from Mr. Weber said that this was consistent with the future years. Prior years. I'm sorry, with prior years, and was also consistent with the needs of a farming operation his size. There was no suggestion, and the bystander's report reflects it. There was no suggestion or argument that this was excessive in any way, that these pieces of equipment weren't real, and that they weren't debt repayments. And I don't think you can just presume some kind of bad faith incurrence of $88,000 worth of debt. I don't think anybody's suggesting bad faith. I think the issue is if in paragraph 13 of that order, Judge Pacey's saying, look, he had $88,000 to spend on equipment, and I think I can deviate, they've agreed to zero, but I think I can deviate now based on that, and order $400 a month. So I see you're out of time. Thank you, counsel. Ms. Wyman. May it please the Court? This should not be a complicated child support case. The facts are generally not disputed. The parties have joint custody and equal time with the children. The parties split all costs for the children except that the mother pays an additional $143 per month for the children's medical, dental, and health insurance that is unreimbursed by the father. The Court heard evidence on the motion to modify child support filed by the mother petitioner, and in that petition filed April 2nd, that petition alleged a substantial change in circumstances. The Court, at its hearing on I believe it was July 2nd, heard the evidence that the respondent, the father, was now earning $1,000 per month starting in April 2012. So starting the month that the petitioner filed for a petition. The issue is, was that dividend previously included in this income? There is no evidence that was in front of the trial court and no evidence in the entire record on appeal that he ever received that $1,000 or $1,000 for his income as additional income. Though the 11th Circuit rules advise that parties are not supposed to file a financial affidavit, there was one starting at C44 for Mr. Weber filed October 13, 2010. So this was well before the judgment of dissolution was entered. And the bottom on C46 where there is a request for the party, in this case Mr. Weber, to state any other income, it simply says source Charles R. Weber Trucking, which I understand to be the trucking company, and the amount as needed basis I haven't driven since January 2010. So the suggestion, certainly if one were to look back in the record, is that he was not receiving any of this income, any additional income, certainly not in the form of an additional $1,000. Now I understand $1,000 per month was gross and not net. But the way that Mr. Weber seems to be arguing this is, and the court I think asked this question, is just because he didn't earn that extra $1,000 in 2011 and so it wasn't counted as the 2011 in his income tax returns, and you didn't calculate any sort of deductions to calculate a net, doesn't mean that it isn't current income at a hearing on July 2nd for income he began receiving and testified. As stated in the bystander's report, began receiving in April of 2012. Ms. Wyman, can I back you up here and take you back to the trial court's initial judgment awarding $400 per month in child support. Initially the court would have to find a substantial change in circumstances. From the record it doesn't appear that it identified any specific change in circumstances. What do you assert to have been the substantial change in circumstances here justifying the award? So I think there are two different changes in circumstances. There's one, and actually Mr. Weber discloses this in the undisputed facts, is that one is that the mother, the petitioner's gross income actually did decrease more than $1,500 gross between 2009 and 2011. As stated on page 7, Carrie testified that in 2011 her gross income from her employment was $58,357.56 and in 2009 it was actually more than $1,500 higher, $59,912.76. I think that's one. The other, which of course would not be reflected in Mr. Weber's income tax returns, is this new $1,000 dividend, which he testified to begin receiving in April 2012 from the family trucking business. Okay, so those are the two that you're identifying. I believe so. Judge Pacey in paragraph 8 of his order basically indicated that he found that your client was earning the same amount. She maintains her former salary. So it doesn't appear that he found that to have been a significant change in circumstances. You would argue that that was an incorrect finding and that we should make a contrary finding? I think that those two circumstances, while $1,500 may not seem like a lot to some people, that is, I believe, one, it is a substantial change in circumstances, especially when you combine it with an additional $1,000, an additional $12,000 that per year, of course it would be $9,000 if it were averaged out for 2012 that Mr. Weber was receiving. But if the trial court is going to identify net income, wouldn't he have to have identified what Mr. Weber would have netted of that $1,000 per month in order to identify and compare the party's net income? The difficulty would be, it would have been nice and it would have been nice if Mr. Weber would have presented not just what his additional gross income of $1,000 was but the net. But the truth is, or probably the facts are, Mr. Weber's personal circumstances may have, I believe, were changing or had changed in 2012 such that tax brackets, marital status, all those sorts of things may have changed what sort of deductions and how to calculate any sort of net income and what his actual net income would be. Did you seek to identify what the net would be of that $1,000 per month dividend? No, Your Honor. I did not. And Mr. Weber did not present any evidence either. We had, of course, April, May, and June information for which he simply testified that beginning in April he started receiving $1,000 a month. But you would be required to show the change of circumstances, correct? There needs to be a substantial change in circumstances. I believe that that was demonstrated especially with Mr. Weber's own testimony that he volunteered that he began receiving an additional $1,000 per month from the family trucking business for which he had a one-fourth interest. But you didn't even know about that. Did you before the hearing? We did not identify that. We believe there was a substantial change in circumstances. But no, we had not done, because you cannot do a discovery request or that sort of thing without any pending pleading. You can suggest on information and belief that there is a substantial change in circumstances. And then, of course, if there is not, if he had not been receiving that additional $1,000. Don't you have to have some basis for saying that in a pleading? You do. And we believed his income was actually higher. Was it because he bought a house? No, that actually wasn't the reason why we believed he had additional income. That house actually, I think, had been purchased by his family for him. And then he took out, then we learned later that he actually turned out that he did remodeling and I think took out a loan. I don't believe any of that's part of the bystanders. The court found that he acknowledged he had purchased a new residence since the dissolution. Okay. So I'm wondering if the purchase of the residence is what triggered the filing of the petition. I mean, all you have that I can tell was the fact that she was using her earned time off. She was. To me, a $1,500 change in income from almost $60,000 to $58,500, in my opinion, would not be something I would consider to be a substantial change in circumstances. It's not just a change. It has to be substantial. I understand that the $308 a month that she was having to use her earned time off, that does run out at the time of the trial court hearings that luckily had not run out yet. But then you have the issue of she took a voluntary change. She did take a voluntary change to be able to spend more time with her children. That is correct. But if you look at that change in income once the ETO runs out, that's over $36,000. Right. But how can he be charged with her taking a voluntary change in hours? I don't think under the case law that would be something that would be considered. No. I think you're right. And I think that had Mr. Weber not received and been receiving $1,000 per month extra in gross from the family trucking business, I don't believe the court would have granted the motion to modify and agreed that child support should be found. Sorry, that there should be a change and that there should be child support. The calculation, I think if you did look at statutory amounts and the court's in a joint custody, the court's not required to do so, there would have been more than $400 that should have been paid when you look at one half of the insurance costs that the mother has been paid. Right. But she agreed to that in the marital settlement agreement. In the marital settlement? So I don't think you can... Sorry, I don't mean to interrupt. That's all right. Go ahead. If that were the only basis for a modification, I think the court is right. You cannot say because she agreed a couple years ago to pay for this that because she no longer wants to or no longer can afford to, that alone would be a substantial change in circumstances. But if the court is going to look at and find a substantial change in circumstances, which I believe not only did the court find, but that there really is a substantial change in circumstances, that in deciding what should be appropriate child support and understanding and acknowledging that the court does not have to use a statutory 28% of net income or an offset from the difference of those net incomes, that the court can consider what the different costs are, including the petitioner's additional costs of health insurance, dental and vision for the children. That is beyond what her own personal health insurance, dental and vision are, in addition to the differences in income. I suppose that the respondent could come back next year and say that, well, in fact, he only made X amount of dollars from that trucking business. We'll see. But I don't think it would be appropriate, as it seemed Robert was arguing, that you have to look at the last year's tax returns because then you'd always be a year off. And you should look at what is the actual income of the parties. We didn't have a net income for that $1,000. We had a gross income. And so modifying it so it's not exactly $429,000, I think is the calculation I came at if you looked at the net incomes and then added in $1,000 gross. Taking off $29.06 per month to make it a round out figure and appropriate, as the court saw it, who had heard the parties testify and made those decisions, I think was an appropriate amount, $400 per month as in for child support in a case where the respondent has this additional income from the family trucking business and where the mother is paying the children's health insurance costs, knowing that child support is always modifiable based on the substantial change in circumstances. But his change in circumstances alone don't then dictate, okay, that's all the child support that's going to be paid. You can consider what those actual costs are, including agreements made by the parties prior to or in the original judgment for those expenses. You don't think Judge Casey relied on the $88,000 in equipment purchases that the respondent made in setting child support? Was that even argued to him? I don't. I think the judge in his ruling was a bit suspect, but I don't believe he relied on those funds. I think Mr. Cagle is accurate when he stated that the court did not rely on those $88,000 as any sort of income that should be calculated. I don't believe that the court relied on that. Because it would appear in paragraph 12 that taking Mr. Weber's installment payments as suggested and deducting them, he found the child support obligations to essentially be a wash, $1,035 per month for respondent, $1,032 per month for petitioner. Except, Your Honor, I believe that the way that he writes that respondent's child support is based on his 2011, respondent's 2011 income tax returns which were submitted, and petitioner's 2011 income tax returns which were submitted, as opposed to the additional income which respondent testified to. And as the bystander's report notes, there was no financial affidavit filed by respondent despite the requirement of the 11th Circuit that financial affidavits be prepared for any modification of child support. Mr. Weber did not file one to disclose that additional income or any sort of calculation regarding that net. So I believe that paragraph 12 is in reference to a 2011 income tax returns as opposed to 2011 plus his new income as one-fourth interest. And the new income doesn't seem to even be contemplated in his order. Is that correct? It is not referenced in his order. It was testified to, so he was aware of it. Yes, it was testified to. And as the bystander's report reflects, And in spite of that, he still comes up with the calculation that's outlined in paragraph 12. Right. And I believe as reflected in the bystander's report, which was prepared by both parties and approved, I believe signed off on, by judge, although actually it doesn't have his signature, it reflects that extra income of Mr. Weber as listed on page 830, page 3 of 5, for subparagraph B of this extra additional $1,000 per month as a dividend he began receiving in April of 2012. So the court was aware of that from the testimony on July 2nd prior to making its ruling in the order that was entered July 10th. I think that the court, that there was a substantial change in circumstances, and the court did not abuse its discretion in finding that substantial change in circumstances and determining that child support in this joint custody case, that $400 a month was appropriate as in for child support. And we would ask the court to affirm the circuit court's decision. Why did he come up with the $400 per month? Since it's not in the record, what I believe he came, or the way I believe he came up with it, I think I wrote about that starting at the bottom of page 5 of my appellee's brief, looking at offsetting, if you look at child support, if you look at Robert's income, and again you can't get exactly what it was, but if his net income was $3,964 per month, which I think is what the monthly income was calculated to be, then you added in $1,000 as the dividend, and I write in the top of page 5, you would get $4,964 a month. Didn't he say, didn't the trial court say in response to Mr. Cagle's concerns at the time of the hearing on the motion for modification that he was not applying an offsetting theory? I don't remember that. I don't remember him stating that. So I think you would have gotten somewhere around $4,964 per month as Mr. Weber's net income or approximate net income. Ms. Weber's income was $3,687. If you would look at that difference and look at 28%, you would see a difference of $1,032.36. If you added in reimbursement for one-half of the medical dental and vision insurance of $71.50 per month, the difference of the $1,032.36 plus one-half, so 28% of that plus the $71.50 is one-half of the insurance, you'd come to $4,2906 per month. I don't think $400 is that far off, and I think it was appropriate we would ask the court to affirm. Thank you, counsel. Mr. Cagle, any rebuttal? Your Honors, in response to the $12,000 issue, I would note on A20 of my brief, paragraph 7 of the court's original order, in 2009, the court makes a finding that Schedule F income for Mr. Weber was $800,145 with a net profit of $62,446. In 2011, it was $721,177 with a net profit of $10,372. $12,000, as much as we want to talk about it, doesn't come close to bridging those two gaps. Whether it's new income, the same income, whatever income, that differential is too large for $12,000 to even touch. And as the court noted, the change in circumstances must be material. It must be substantial. Don't those net figures reflect depreciation taken? When you say net profit on Schedule F. The net profit on Schedule F does reflect depreciation taken. Yes, it does. So ordinarily that would all get added back in and we have no way of knowing, at least where I sit, if there was a larger amount of depreciation taken in 2011 versus 2009. Your Honor, the taxes are in the court's record, so there is a way of knowing. I've not spelled it out in the brief and I apologize if I've been remiss in that. But if you look at the gross figures alone, which the court obviously found relevant enough to put in its ruling, $12,000 doesn't touch these differentials, either on the gross or the net side. And when you look at the other basis for the – and on one more note, quite clearly this wasn't part of Judge Pacey's rationale in this ruling. It's not mentioned in the written order. It was not mentioned in the bench ruling of the motion to reconsider. Never at any point did Judge Pacey say, you're making this new $12,000 a year. He never categorized it as a new $1,000 a month. So therefore, we're awarding some form of child support. That was never from any part of the record. What was the change then that he relied on? Do you know? He did not specify one. I directly asked that the motion to reconsider for him to state what the substantial change in circumstance was. And I believe his exact quote was, there are a variety of changes in circumstances. I don't – period. And then he cut it off then. So – but the fact is there hasn't been one named in the order. There is not one apparent from the stipulated facts. There's not one apparent from the pleadings of the evidence. When you look at the $1,500 a year, that represents 2.5% of Ms. Reich's income. That's 2.5%. That's not a substantial change in circumstances. And as the courts noted already, even that reduction was voluntarily taken. So we have no substantial change in circumstances. And Judge, Your Honors, in closing, there's not surprisingly a case that's quite like this in the reported record. The Demacia case deals with a situation where there was not equal overnight parenting time. And there was a designation in favor of the child support recipient. The other split custody cases deal with vast income differentials, $66,000 to $8,000 in the Fleming case. And an unemployed and disabled spouse in the Revlin-Sonenson case. There isn't a case like this where there's been a child support award given. And there's certainly not a case when the net incomes are found to be relatively equal, both parents make good money, we're in a rural area, the kids' needs aren't an issue, where a court makes a child support order on the basis of an upward deviation from the guidelines. Which is what Judge Pacey apparently said he was doing in the transcript on the motion to reconsider. Your Honor, I think for those reasons, this was an abuse of discretion, both on the substantial change in circumstances side and on the side of awarding child support even after making that finding. And on that basis, I'd ask the trial court to reverse the judge's ruling and to reinstate the support provisions as per the original joint parenting agreement with the equal expense splitting. Thank you, Mr. Cagle. The court will take this matter under advisement and will be in recess until the next case.